## IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF MISSISSIPPI
## JACKSON  DIVISION

**COREY BARLOW**                                    **PETITIONER**

**VERSUS**                    **CIVIL ACTION NO.  3:10CV345 CWR-LRA**

**CHRISTOPHER EPPS**                                **RESPONDENT**

## REPORT AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

Corey Barlow was convicted in the Circuit Court of Lincoln County, Mississippi,

and seeks federal habeas relief under 28 U.S.C. § 2254.  After a review of the entire

record, the undersigned recommends that his petition be dismissed with prejudice.

### Factual and Procedural Background

In April 2005, Barlow was convicted of two drugs counts:  possession of cocaine

with intent to distribute while in possession of a firearm and conspiracy to distribute

cocaine.  He was sentenced to 50 years imprisonment for possession and 10 years for

conspiracy for a total of 60 years; the sentences were to run concurrently, with the

provision that 47 years be served in the custody of the Mississippi Department of

Corrections and that the remaining 13 be served on post-release supervision.  The relevant

facts are described in more detail in the state court's opinion as follows:

> On March 1, 2004, Purser, a field officer with the Mississippi
> Department of Corrections, received an anonymous tip stating that Barlow
> was living on Beard Road in Lincoln County and that he and Thomas
> McWilliams were in possession of a large amount of drugs. In an effort to
> confirm the information, Officer Purser contacted the Lincoln County
> Sheriff's Department (Sheriff's Department) and asked it to assist him in
> locating Barlow. Purser and officers from the Sheriff's Department went to
> the residence on Beard Road; however, no one was there.

The next day Officer Purser received a second anonymous tip informing him that Barlow would be going to the residence on Beard Road sometime that afternoon and that drugs would likely be in his vehicle and residence. During this time, Barlow was on parole for possession of marijuana with intent to distribute. Officer Purser attempted to contact Barlow's field officer, Tanya Thompson; however, she was not available. As a result, Officer Purser spoke with Greg Ferrell, a field officer in Copiah County, who informed him that Barlow had previously failed drug tests.

Officer Purser and officers from the Sheriff's Department returned to the Beard Road residence, and again Barlow was not there. Officers from the Sheriff's Department then set up a roadblock on the road that leads to Barlow's residence. About an hour later, Barlow and McWilliams approached the roadblock. Officer Purser was positioned at the opposite end of the road from where Barlow entered the roadblock, but he quickly went to where Barlow had been detained. Barlow and McWilliams were asked to exit the vehicle, and while McWilliams was doing so, drugs fell out of the car. McWilliams also had approximately two thousand dollars on his person.

Dustin Barefield, a major with the Sheriff's Department, participated in the search and testified on behalf of the State. Major Barefield stated that he read Barlow and McWilliams their Miranda rights after the drugs fell from the car. Officer Purser confirmed that Major Barefield read Barlow his rights. Major Barefield also testified that McWilliams claimed that the drugs belonged to Barlow and that Barlow agreed. He also stated that after he read Barlow his rights, he asked him whether he had any more drugs. Barlow then informed him that another bag of drugs was in the vehicle and that additional drugs could be found at his nearby residence. Major Barefield stated that McWilliams and Barlow verbally consented to the search of the residence, and McWilliams later signed a consent to search form at the Sheriff's Department. He also stated that Barlow agreed to lead the officers to the house where he told them that he had been residing for three weeks prior to this incident. Upon arriving at the residence, Major Barefield stated that Barlow led them to a room where he showed them a cabinet which contained what Major Barefield described as "a large sum of crack and powder cocaine." Major Barefield stated that he also found two "bricks of powder cocaine" which weighed about 2.2 pounds each. According to Major Barefield, several more bags of powder and crack cocaine were found in the residence.

Major Barefield stated that Barlow then led the officers to what Barlow referred to as "his" bedroom, where he showed them yet more drugs. Major Barefield testified that they also found a handgun in Barlow's bedroom. He stated that Barlow implicated himself in the drug operation, stating that all of the items that had been recovered belonged to him and that selling drugs provided him with a means of income. Major Barefield also stated that the quantity of the drugs and the different ways in which they were packaged led him to conclude that Barlow was involved in the distribution of crack and powder cocaine. McWilliams and Barlow were

arrested and taken into custody. Major Barefield estimated that the total street value of the drugs recovered from Barlow's residence was approximately $345,730.

B.W. Pitts, a deputy with the Sheriff's Department, also assisted with the investigation and testified for the State. Deputy Pitts testified that after Major Barefield read Barlow and McWilliams their rights, he placed Barlow in his patrol car and took him to the house. According to Deputy Pitts, while Barlow was in the car, they had a "conversation" wherein Barlow informed him that there would be "a lot of more drugs" in the house. On cross-examination, Deputy Pitts was asked if he questioned Barlow on the way to the house, and he responded by stating that: "I just made a statement that if it was anymore there, you know, it'd be best to tell it. And then that's when he said we was gonna find a lot." Deputy Pitts did not participate in the search of the residence.

John Whitaker, a deputy with the Sheriff's Department, was also present at the roadblock and assisted in arresting McWilliams and Barlow. Deputy Whitaker recalled a slightly different version of how the drugs were discovered when McWilliams exited the vehicle. He testified that he asked McWilliams to exit the vehicle and that when he attempted to perform a pat-down search, drugs fell out of McWilliams's shirt. He notified Major Barefield, placed McWilliams in handcuffs, read him his rights, and placed him in the patrol car. Deputy Whitaker searched the vehicle and found another bag of what appeared to be cocaine. He stated that at that point Barlow said, "I've got more at the house and I'll show you."

The last witness the State called was the owner of the Beard Road residence, Charles Brown. McWilliams and Barlow are Brown's nephews, and Brown allowed them to reside at the residence. He testified that McWilliams and Barlow were living at the residence at the time of this incident. On cross-examination, Brown testified that he did not give Barlow a key to the residence, but he also stated that he did not know if Barlow had a key.

The defense presented three witnesses: Alfred Motley, Barlow's long-time friend; Theresa Barlow, Barlow's mother; and Frederick Barlow, Barlow's uncle. Motley stated that he grew up with Barlow. Motley testified that Barlow did not live at the Beard Road residence because he had been living with his grandmother and mother on Beauregard Road in March 2004. He stated that he would often see Barlow at the Beauregard Road residence. On cross-examination, Motley conceded that he did not spend a significant amount of time with Barlow and that he did not know if Barlow had spent nights away from his grandmother's house.

Theresa also testified that Barlow lived on Beauregard Road in March 2004. Theresa stated that she had seen some of Barlow's personal belongings at the Beauregard residence. Theresa testified that she was aware that McWilliams lived at the Beard Road residence, but she stated that she did not know whether Barlow visited him there. Regardless, she was certain that Barlow did not live at the Beard Road residence.

3

Frederick stated that he had been living at the Beauregard residence for approximately seven months prior to the incident in question and that Barlow lived there as well. Frederick testified that the only other residence at which Barlow lived was his mother's. On cross-examination, Frederick stated that he was not sure whether Barlow spent the night at the Beauregard residence on March 2, 2004. On redirect examination, Frederick testified that Barlow spent most nights at the Beauregard residence.

*Barlow v. State*, 8 So.3d 196, 199-201 (Miss. Ct. App. 2008), *reh'g denied*, Dec. 16, 2008, *cert. denied,* April 30, 2009.

Following his conviction, Barlow appealed and asserted the following grounds for relief as framed by the Mississippi Court of Appeals:

(1)    that the roadblock that led to his arrest violated his Fourth Amendment rights;

(2)    that Officer John Purser did not have the authority to stop him;

(3)    that the trial court erred in refusing to suppress the statements he allegedly made;

(4)    that the trial court erred in refusing to strike certain portions of the indictment;

(5)    that the trial court erred in allowing the jury to hear that he had a prior conviction and was on parole at the time of this incident, and in allowing the jury to hear improper statements by the prosecutor in his closing argument;

(6)    that the trial court erred in allowing a witness to provide expert testimony;

(7)    that the trial court erred in its instructions to the jury;

(8)    that the evidence is insufficient to sustain his conviction;

(9)    that his sentence violates the Eighth Amendment; and,

(10)    that the cumulative effect of the errors mandate reversal of his conviction.

*Id.* at 199. After considering each of these issues on the merits, the Mississippi Court of Appeals affirmed Petitioner's conviction in a written opinion, and denied his request for

rehearing. *Id.* The Mississippi Supreme Court denied a writ of certiorari on April 30, 2009.

Barlow subsequently filed a state court motion for post-conviction collateral relief asserting that counsel was ineffective for: failing to adequately investigate; failing to properly object to the search and seizure; failing to file a motion to dismiss the charges; failing to object to the admission of his prior convictions and parolee status; failing to timely object to the prosecution's closing argument; failing to move for a mistrial or to object to the prosecution's closing arguments; and for failing to submit evidence that his sentence was disproportionate under *Solem v. Helm*, 463 U.S. 277 (1983). The motion was denied by the Mississippi Supreme Court for "failing to make a substantial showing of the denial of a state or federal right as required by Miss. Code Ann. § 99-39-27(5)." [1]

Barlow now seeks federal habeas corpus relief in this court. As grounds, he raises the following:

1. Petitioner was denied due process of law because evidence presented at trial was obtained through an illegal search and seizure;

2. The prosecutor's improper comments during closing argument concerning the ownership and possession of the gun and cocaine warrant reversal of Petitioner's conviction and sentence;

3. The trial court erred in admitting evidence of Petitioner's prior conviction;

4. Ineffective assistance of trial and appellate counsel:

   A. Trial counsel failed to object to the allegations raised in Grounds One, Two, Three and Five or to renew any objections made;

---

[1]ECF No. 8-11, p. 2.

B.	Trial counsel failed to investigate Petitioner's case;

C.	Trial counsel failed to move for a dismissal of the charges on the ground of the illegal search and seizure and failed to renew any objections to the search and seizure;

D.	Trial counsel failed to lodge a timely objection to the admission of Petitioner's prior conviction and parolee status;

E.	Trial counsel failed to lodge a timely objection to the State's closing argument and failure to request a mistrial;

5.	The trial court erred in allowing State's witness Dustin Barefield to testify as an expert, thus bolstering his testimony.

In February 2011, Barlow requested that this court dismiss his petition without prejudice so that he could secure the state court record and exhaust any amended claims that may arise from his examination of the record. Petitioner's motion was denied but he was granted an additional 90 days to request the transcript and to submit an amended petition. He subsequently filed an amended petition raising the following issues:

A(1).	Ineffective assistance of trial counsel for:

a.	Failure to raise proper objections to "Barefield and other witnesses at trial."

b.	Failure to call Officer Purser as a witness in order to refute and impeach Barefield and introduce information regarding the confidential informant.

c.	Failure to call Barlow's probation officer as a witness.

A(2).	The trial court erred in failing to suppress Barlow's statements.

A(3).	The trial court erred by allowing the prosecutor to argue facts not in evidence concerning Barlow's prior convction and parole and to make improper closing arguments.

A(4).	The sentence is illegal under the Eighth Amendment because it was improperly enhanced.[2]

**Standard of Review**

---

[2]The claims raised in the amended petition are referenced as "A".

This Court's review of Petitioner's claims for federal habeas relief is governed by the Antiterrorism and Effective Death Penalty Act ("AEDPA") of 1996. Under the Act, this Court cannot grant a petitioner federal habeas corpus relief for any claim that was adjudicated on the merits in a state court proceeding, unless the adjudication:

(1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). Under 28 U.S.C. § 2254(d)(1), this court reviews questions of law as well as mixed questions of law and fact, while questions of fact are reviewed under 28 U.S.C. § 2254(d)(2).

Under the first prong, the clauses "contrary to" and "unreasonable application of" are independent bases for granting federal habeas relief. *Williams v. Taylor*, 529 U.S. 362, 405 (2000). A state court's decision is "contrary to" federal law if it contradicts Supreme Court precedent or reaches a different result on materially indistinguishable facts. *Id.* Under the "unreasonable application" clause, a federal habeas court may grant relief if the state court "correctly identifies the governing legal principle" but then "unreasonably applies it to the facts of the particular case." *Bell v. Cone*, 535 U.S. 685 694 (2002). The state court's decision must be objectively unreasonable, not merely erroneous or incorrect. *Rompilla v. Beard*, 545 U.S. 374, 380 (2005).

AEDPA's second prong requires that federal courts defer to a state court's factual

determinations unless they are based on an "unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000). Deference is critical because federal courts have no authority to grant habeas corpus relief simply because "we conclude, in our independent judgment, that a state supreme court's application of [federal] law is erroneous or incorrect." *Catalan v. Cockrell*, 315 F.3d 491, 493 (5th Cir. 2002). Thus, we presume the state court's determination of a factual issue is correct, unless a petitioner rebuts the presumption with clear and convincing evidence. *See* 28 U.S. C. § 2254 (e)(1).

### Discussion

### 1. Ground One is Barred by *Stone v. Powell,* **428 U.S. 465 (1976).**

In ground one, Barlow asserts that his Fourth Amendment rights against an illegal search and seizure were violated. Specifically, he claims that the drugs seized from both the vehicle and the Beard Road residence were illegally obtained because authorities lacked reasonable suspicion or probable cause to conduct the initial stop. *Stone v. Powell*, 428 U.S. 465 (1976) bars our review of this claim.

*Stone* instructs that Fourth Amendment claims are not cognizable for federal habeas review when a petitioner was provided a full and fair opportunity to litigate those claims in state court. In this Circuit, an opportunity "mean[s] just that: 'an opportunity.'" *Janecka v. Cockrell*, 301 F.3d 316, 320 (5th Cir. 2002) (quoting *Caver v. Alabama*, 577 F.2d 1188, 1192 (5th Cir.1978)). Barlow received a full and fair opportunity here.

Prior to trial, defense counsel filed a motion to suppress the evidence based on the United States Supreme Court's ruling precluding pre-textual stops in *City of Indianapolis v. Edmond*, 531 U.S. 32,44 (2000). After extensive oral arguments and briefing on the issue, the trial court issued a written opinion finding no Fourth Amendment violation.[3] Counsel also contemporaneously and continually objected to the evidence on the same grounds at trial but was overruled. The issue was reasserted on direct appeal, and the Mississippi Court of Appeals upheld the constitutionality of the search for the reasons that follow:

> Barlow's reliance on *Edmond* is misplaced, as he fails to consider that because he is a parolee, he has a lesser expectation of privacy. While we recognize that the Fourth Amendment mandates that searches be reasonable, "the reasonableness of a search is determined 'by assessing, on the one hand, the degree to which it intrudes upon an individual's privacy and, on the other, the degree to which it is needed for the promotion of legitimate governmental interests.' " *United States v. Knights*, 534 U.S. 112, 118–19, 122 S.Ct. 587, 151 L.Ed.2d 497 (2001) (quoting *Wyoming v. Houghton*, 526 U.S. 295, 300, 119 S.Ct. 1297, 143 L.Ed.2d 408 (1999)). In *Samson v. California*, 547 U.S. 843, 850, 126 S.Ct. 2193, 165 L.Ed.2d 250 (2006), the United States Supreme Court held that:
>
> > [P]arolees are on the "continuum" of state-imposed punishments. [ *Knights*, 534 U.S. at 119], 122 S.Ct. 587, 151 L.Ed.2d 497 (internal quotation marks omitted). On this continuum, parolees have fewer expectations of privacy than probationers, because parole is more akin to imprisonment than probation is to imprisonment. As this Court has pointed out, "parole is an established variation on imprisonment of convicted criminals.... The essence of parole is release from prison, before the completion of sentence, on the condition that the prisoner abides by certain rules during the balance of the sentence." *Morrissey v. Brewer*, 408 U.S. 471, 477, 92 S.Ct. 2593, 2598 33 L.Ed.2d 484, 492 (1972) ]. "In most cases, the State is willing to extend parole only because it is

---

[3]ECF No. 8-10, pp. 69-71.

> able to condition it upon compliance with certain requirements."
>
> Further, in *Robinson v. State*, 312 So.2d 15, 18 (Miss.1975), the Mississippi Supreme Court concluded that "courts generally hold that although an inmate is released on parole, the parole authorities may subject him, his home and his effects, to inspection and search as may seem advisable to them." This issue lacks merit.

*Barlow*, 8 So.3d at 202.

Although Barlow maintains that the state court's analysis is flawed, *Stone* applies even when a state court's ruling is erroneous. *Balentine v. Quarterman*, 324 F. App'x. 304, 307 (5th Cir. 2009) ("If the term 'fair hearing' means that the state court must correctly apply federal constitutional law, *Stone* becomes a nullity.") (quoting *Swicegood v. Alabama*, 577 F.2d 1322, 1324 (5th Cir.1978)).[4] That he disagrees with the state court's determination is immaterial. He was afforded a full and fair opportunity to litigate his Fourth Amendment claim in state court. Absent new evidence that was not available at the time of trial, or "proof that the state process is 'routinely or systematically applied in such a way as to prevent the actual litigation of [F]ourth [A]mendment claims on their merits,'" he is barred from re-litigating his Fourth Amendment claims in this court. *Smith v. Maggio*, 664 F.2d 109, 111 (5th Cir. 1981) (quoting *Williams v. Brown*, 609 F.2d 216,

---

[4]In any event, notwithstanding *Stone's* bar, Barlow's claim fails on the merits for the reasons and authorities cited on direct appeal. Clearly established federal precedent dictates that parolees have a lower expectation of privacy. *Knights*, 534 U.S. at 18–19; *Houghton*, 526 U.S. at 300; *Samson*, 547 U.S. at 850. *See also Fraise v. Bingham*, 1:10CV266, HSO-JMR, 2012 WL 2953691 (S.D. Miss. July 19, 2012) (noting that a parolee "'has at least as much protection as he had within the prison walls. He did not possess this guaranty in prison and it was not restored to him when the gates of parole opened.'") (quoting *People v. Hernandez*, 229 Cal. App. 2d 143, 150 (Cal. Ct. App. 1964)).

220 (5th Cir. 1980)).  For these reasons, no relief is warranted on this claim.

**2.  Ground Two is Procedurally Defaulted from Federal Habeas Review.**

In ground two, Barlow asserts that he is entitled to habeas relief because the prosecution argued facts not in evidence during closing argument.  He specifically objects to the prosecutor's comments, *inter alia*, that he initially claimed that the gun found in his bedroom belonged to his girlfriend; these remarks, he alleges, were unfairly prejudicial because they established his only connection to the Beard Road residence.

It is undisputed that the prosecutor argued the following facts that had no basis in evidence:

> "Why was his girlfriend's gun in that house, in his bedroom that he said belonged to him. Why is it still in there? Why is it in that house?" . . .
>
> . . . During his confession, he said that this is my girlfriend's. This is **his** girlfriend's. Let me ask you a question, the smoking gun. Why here today with no connection, ladies and gentlemen: no connection to that house: no connection to all this dope. Why was his girlfriend's gun in that house, in his bedroom that he said belonged to him. Why is it still in there? That was not disputed. This is his girlfriend's gun. Why is it in that house? [5]

While a review of the record shows that defense counsel did not lodge a contemporaneous objection to these remarks, he requested a curative instruction immediately after the jury was discharged for deliberation.  Counsel's objection was overruled in part as untimely, and this claim was dismissed as procedurally barred for failure to timely object on direct appeal.  Notwithstanding the procedural bar, the Mississippi Court of Appeals found the prosecutor's comments, while improper, did "not

---

[5]ECF No. 8-8, p. 42.  (Emphasis in original).

11

rise to the level of reversible error, as the natural and probable effect of the prosecutor's argument did not 'create an unjust prejudice against [Barlow] as to result in a decision influenced by the prejudice so created.'" *Barlow*, 8 So.3d at 207 (quoting *Slaughter v. State*, 815 So.2d 1122,1133 (Miss. 2002)).

Under the procedural default doctrine, federal courts are precluded from considering a habeas claim when the state court rejected the claim on an independent and adequate state law ground. *Maples v. Thomas* — U.S. —, 132 S.Ct. 912, 922, 181 L.Ed. 2d. 807 (2012); *Hernandez v. Thaler*, 440 F. App'x 409, 415 (5th Cir. 2011). To be adequate, a procedural bar rule must be "strictly or regularly" applied by the state courts to the "vast majority of similar claims." *Amos v. Scott*, 61 F.3d 333, 339 (5th Cir. 1995). The Fifth Circuit has long considered Mississippi's contemporaneous objection rule to be an independent and adequate state procedural bar that is regularly and consistently applied to similar claims. *Smith v. Black,* 970 F.2d 1383, 1387 (5th Cir. 1992). Still, a petitioner can overcome a procedural default under two narrow exceptions: if he demonstrates "cause for the default and actual prejudice" or shows that "failure to consider the claim[ ] will result in a fundamental miscarriage of justice." *Jones v. Jones*, 163 F.3d 285, 296 (5th Cir. 1998) (quoting *Moawad v. Anderson*, 143 F.3d 942, 947 (5th Cir. 1998)).

Barlow does not show that either exception is met here. To the extent that he asserts that counsel's failure to contemporaneously object constitutes cause, his argument

fails. *Strickland v. Washington* 466 U.S. 668, 690 (1984). "[T]he question of cause for a procedural default does not turn on whether counsel erred or on the kind of error counsel may have made. So long as a defendant is represented by counsel whose performance is not constitutionally ineffective under the standard established in *Strickland v. Washington* , ... we discern no inequity in requiring him to bear the risk of attorney error that results in a procedural default." *Murray v. Carrier*, 477 U.S. 478, 488 (1986). In this case, Barlow not only fails to establish that counsel's failure to contemporaneously object was constitutionally ineffective under *Strickland*, but he acknowledges in his petition for habeas relief that a "contemporaneous objection would have served only to magnify the [prosecutor's comments]."[6] Absent cause to overcome the procedural default, this Court need not consider whether Barlow suffered actual prejudice. *Saahir v. Collins*, 956 F.2d 115 (5th Cir.1992).

Further, while Barlow claims actual innocence, he has not offered any "new and reliable"evidence to warrant application of the fundamental-miscarriage-of-justice exception. *Fairman v. Anderson*, 188 F.3d 635, 644 (5th Cir. 1999). To meet this exception, actual innocence claims must be supported with new, reliable evidence not presented at trial, and a petitioner must show that it was "more likely than not that no reasonable juror would have convicted him in the light of the new evidence." *Id*. (quoting *Schlup v. Delo*, 513 U.S. 298, 327 (1995)). In this case, Barlow has not shown

---

[6]ECF No. 2, p. 12.

13

"as a factual matter, that he did not commit the crime of the conviction." *Id.* (quoting

*Ward v. Cain*, 53 F.3d 106, 108 (5th Cir.1995)). Further, his contention that the

prosecutor's remarks were the only thing connecting him to the Beard Road residence is

without merit. The evidence of record supported the fact that he had been living at the

Beard Road residence for at least three weeks and that he listed it as his residence on the

booking card at the police station.[7]

Mississippi's contemporaneous objection rule procedurally bars this claim from

federal habeas review. As such, Barlow's procedurally defaulted claim challenging the

propriety of the prosecutor's closing arguments should be dismissed with prejudice

without review of the merits.

### 3. Grounds Three, Four and Five are Without Merit.

In ground three, Barlow asserts that the trial court erred in admitting evidence of

his prior conviction for possession of marijuana with intent to distribute and conspiracy to

possess and distribute a controlled substance. The record reflects that the trial court

admitted this evidence for the limited purpose of proving intent pursuant to Rule 404(b)[8]

_____

[7]ECF No. 8-7, p. 15.

[8] Rule 404(b) of the Mississippi Rules of Evidence provides as follows:

> (b) Other Crimes, Wrongs, or Acts. Evidence of other crimes,
> wrongs, or acts is not admissible to prove the character of a person
> in order to show that he acted in conformity therewith. It may,
> however, be admissible for other purposes such as proof of motive,
> opportunity, intent, preparation, plan, knowledge, identity, or
> absence of mistake or accident.

of the Mississippi Rules of Evidence.  The evidence was ruled properly admitted on

appeal.  *Barlow*, 8 So.3d at 207.

It is well established that a "federal habeas court has nothing whatsoever to do

with reviewing a state court ruling on the admissibility of evidence under state law"

unless it violates the Constitution or rendered the trial so fundamentally unfair that it

violated due process.  *Pemberton v. Collins*, 991 F.2d 1218, 1223 (5th Cir.1993).  Barlow

asserts no constitutional violations here.  He merely contends, as he did in state court, that

admitting evidence of his prior convictions was unfairly prejudicial and should have been

excluded under M.R.E. 403.[9]

We must accord deference to the state court's evidentiary ruling. 28 U.S.C. §

2254; *Jones v. Parker*, No., 2:05CV234, 2007 WL 2059999, *3  (N.D. Miss. July, 12,

2007).  "We do not sit as a 'super' state supreme court."  *Smith v. McCotter*, 786 F. 2d

697, 700 (5th Cir. 1986).  Mississippi appellate courts are "free to police their own

evidentiary rules."  *Pemberton,* 991 F.2d at 1224.  But even assuming the evidence was

erroneously admitted by the trial court, there must be "more than a mere possibility that

---

[9] Rule 403 of the Mississippi Rules of Evidence provides as follows:

> Although relevant, evidence may be excluded if its probative value
> is substantially outweighed by the danger of unfair prejudice,
> confusion of the issues, or misleading the jury, or by
> considerations of undue delay, waste of time, or needless
> presentation of cumulative evidence.

[the error] contributed to the verdict.  It must have had a substantial and injurious effect or influence in determining the verdict."  *Mayabb v. Johnson*, 168 F.3d 863, 868 (5th Cir. 1999) (quoting *Woods v. Johnson*, 75 F.3d 1017, 1026-27 (5th Cir. 1996)).

Notwithstanding his prior convictions here, the evidence supports Barlow's convictions for possession and intent to distribute in this case.  He was found in possession of drugs valuing over $300,000 – the quantity and packaging of which a narcotics agent testified were indicative of an intent to distribute, not personal use. The quantity and packaging of the drugs were also admitted into evidence for the jury's viewing.  The jury also heard testimony that Barlow admitted his intent to sell the drugs so that he could reportedly make enough money to move to Florida with his girlfriend. Lastly, it was Barlow, not McWilliams, who directed the police to the location of the drugs and gun in the Beard Road residence.  In view of this evidence, Barlow cannot show that his prior convictions for possession and intent to distribute had a substantial or injurious effect on the jury's verdict, or rendered his trial so fundamentally unfair to warrant habeas relief.  The state court's rejection of this claim was not contrary to or an unreasonable application of clearly established federal law.

In ground four, Barlow argues that counsel was ineffective for failing to object to the allegations raised in grounds one, two, three and five, and for failing to investigate his case.  To warrant relief, Barlow must prove that "counsel's performance was deficient" and "the deficient performance prejudiced the defense" so gravely as to "deprive the

defendant of a fair trial; a trial whose result is unreliable." *Strickland,* 466 U.S. at 687.

AEDPA additionally requires that he show that the state court's adjudication of his

ineffective assistance of counsel claims was an "unreasonable application" of *Strickland.*

"Surmounting *Strickland'*s high bar is never an easy task" and "[e]stablishing that a state

court's application of *Strickland* was unreasonable under § 2254(d) is all the more

difficult." *Vasquez v. Thaler,* No. 12-70020, 2013 WL 28432, *4 (5th Cir. Jan. 2, 2013)

(quoting *Premo v. Moore*, ⸺ U.S. ⸺, ⸺ 131 S.Ct. 733, 739–40, 178 L.Ed.2d 649

(2011) (internal quotation marks and citations omitted)).

   As it relates to his failure-to-investigate claim, Barlow must allege "with

specificity what the investigation would have revealed and how it would have altered the

outcome of the trial." *United States v. Green*, 882 F.2d 999, 1003 (5th Cir. 1989). For

"without a specific, affirmative showing of what the missing evidence or testimony would

have been, 'a habeas court cannot even begin to apply *Strickland's* standards' because

'it's very difficult to assess whether counsel's performance was deficient, and nearly

impossible to determine whether the petitioner was prejudiced by any deficiencies in

counsel's performance.'" *Anderson v. Collins*, 18 F.3d 1208, 1221 (5th Cir. 1994)

(denying habeas relief on ineffective assistance of counsel claim because petitioner only

offered conclusory allegations of deficient performance by counsel based on failure to

investigate). Again, Barlow makes no affirmative showing here. Other than his blanket

assertion that counsel failed to investigate, he fails to identify any defenses or facts that

warranted further investigation.

Likewise, his claims that counsel failed to object to the allegations raised in grounds one (search and seizure), two (prosecutor's closing argument), three (prior conviction), and five (expert testimony) are also without merit. The record reflects that counsel not only filed a pre-trial motion to suppress the evidence obtained pursuant to the search and seizure, but he submitted extensive arguments and briefing on the issue and lodged a continuing objection at trial. He also filed pre-trial motions to exclude Barlow's parolee status and prior drug convictions, and made a continuous objection to their admissibility at trial. He also objected to the qualification of Major Barefield as an expert in narcotics investigation, and moved to exclude his opinion testimony that the quantity and packaging of the drugs indicated an intent to distribute.

The only apparent instance in which counsel failed to contemporaneously object was during closing arguments, when the prosecution erroneously argued that Barlow had claimed that the gun belonged to his girlfriend. As noted earlier, although counsel requested a curative instruction immediately following closing arguments, his request was denied as untimely. In doing so, the trial court reasoned in part, that the jury had been previously instructed to disregard any arguments of counsel that had no basis in the evidence. Jurors are presumed to follow the court's instructions, and the undersigned finds no basis for finding that they did not do so here. *Zafiro v. United States*, 506 U.S.

534, 540-41 (1993) (citing *Richardson v. Marsh*, 481 U.S. 200, 211 (1987)). Also,

Barlow himself acknowledges that a "contemporaneous objection would have served

only to magnify the [prosecutor's comments]."[10] Often, trial counsel will withhold

objections or forego motions for mistrial for strategic purposes. *See Burnett v. Collins*,

982 F.2d 922, 930 (5th Cir. 1993) (The failure to object may be a "matter of trial strategy

as to which [the courts] will not second guess counsel."). This Court must give deference

to counsel's strategic decisions, and Barlow has not overcome the strong presumption

that counsel's strategy was sound, nor has he shown the strategy was "so ill chosen that it

permeate[d] the entire trial with obvious unfairness." *United States v. Jones,* 287 F.3d,

325, 331 (5th Cir. 2002).

Even if counsel had lodged a contemporaneous objection, Barlow cannot show

that it is "reasonably likely" that the result would have been different. *Harrington v.

Richter*, ——— U.S. ———, ——— – ———, 131 S.Ct. 770, 791–92, 178 L.Ed.2d 624 (2011)

(quoting *Strickland*, 466 U.S. at 696). In assessing prejudice under *Strickland*, the

"likelihood of a different result must be substantial, not just conceivable." *Id*. at 792. In

this case, Barlow has not shown that the evidence against him was so insubstantial that

but for the prosecutor's remarks, he would not have been convicted. Under Mississippi

law, the State was only required to prove that Barlow had dominion and control of the

gun, not ownership. *Mosley v. State*, 930 So.2d 459 (Miss. App. 2006). The gun was

---

[10]ECF No. 2, p. 12.

found in Barlow's bedroom at the Beard Road Residence, and officers testified that

Barlow admitted that the gun was in his possession. And, as noted by the trial court in

denying counsel's request for a curative instruction:

> . . . .Where the gun came from is of relatively little consequence. If the State's witnesses are believed, the defendant admitted it was his gun, whether it was from his grandmother or his sister or from the store down the street. So the effect, if any, . . was minimal.[11]

Absent a showing of deficient performance or prejudice, Petitioner cannot show

that the state court's denial of his ineffective assistance of counsel claims was contrary to,

or an unreasonable application of *Strickland*. He is not entitled to federal habeas corpus

relief on this claim.

Next, Barlow argues in ground five that Major Barefield's testimony concerning

his "intent to distribute" was erroneously admitted because it fell far short of both M.R.E.

702[12] and *Daubert v. Merrill Dow Pharmaceuticals, Inc.,* 509 U.S. 579 (1993). Major

Barefield testified that based on his extensive training and experience as a narcotics agent,

the cumulative value of the drugs in Barlow's possession was $345,730.00, and the

---

[11]ECF No. 8-8, p. 47.

[12] Rule 702 of the Mississippi Rules of Evidence provides as follows:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as a expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

quantity and packaging of same were consistent with someone who intended to distribute.[13] Barlow alleges that by permitting Major Barefield to give these opinions, the trial court unfairly bolstered the factual portion of his testimony, i.e., Barlow's incriminating statements confessing to the ownership and location of the drugs. In reviewing this claim on direct appeal, the court noted that it was "not entirely clear whether the trial judge qualified Major Barefield as an expert," but because his testimony "was based on his experience as a law enforcement officer, it did not exceed what is allowed under Rule 701 of the Mississippi Rules of Evidence."[14] *Barlow*, 8 So.3d at 207, 208.

Whether the state court properly applied Rules 701 and 702 of the Mississippi Rules of Evidence is not subject to re-examination by this court. While Mississippi courts have adopted the *Daubert/Kumho* standard in evaluating the admissibility of expert testimony, *Miss. Transp. Comm'n v. McLemore*, 863 So.2d 31 (Miss. 2003), our standard of review "is not whether the testimony satisfied the *Daubert* test, which does not set forth a constitutional rule on the admissibility of scientific evidence, but rather whether

---

[13]ECF Nos. 8-6, pp. 147-150; 8-7, p. 2.

[14] Rule 701 of the Mississippi Rules of Evidence provides as follows:

> If the witness is not testifying as an expert, the witness's testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness, (b) helpful to the clear understanding of the testimony or the determination of a fact in issue, and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.

the wrongful admission of evidence rendered the trial fundamentally unfair." *Schmidt v. Hubert*, No.05-2168, 2008 WL 4491467, *14 (W.D. La. Oct. 6, 2008) (citations omitted); *Hill v.Virga*, No. C 11-4793 YGR (PR) , 2013 WL 321843, *12 (N.D. Cal. Jan. 28, 2013) (*Daubert* is "based on the federal rule of evidence, not the Constitution"). A trial is fundamentally unfair only if evidence erroneously admitted played a "crucial, critical, and highly significant role in the trial. . . ." *Little v. Johnson*, 162 F.3d 855, 862 (5th Cir.1998) (citing *Andrade v. McCotter*, 805 F.2d 1190, 1193 (5th Cir.1986)).

Barlow has not made this showing here. In addition to Major Barefield's testimony, the drugs seized from both the vehicle and the Beard Road residence were marked into evidence for the jury's consideration. Major Barefield also testified that Barlow had confessed to the ownership and location of the drugs, and other officers present at the scene gave corroborating testimony to that effect. After careful consideration, the state court determined that Major Barefield's opinion testimony was based on his experience and within the bounds of M.R.E. Rule 701. Barlow has not shown this ruling was erroneous, or rendered his trial so fundamentally unfair to warrant federal habeas relief. No habeas relief is warranted on this claim.

### 4. The Amended Grounds are Unexhausted and/or Untimely.

Finally, Barlow's amended petition contains numerous arguments that were not raised on direct appeal or in his motion for post-conviction relief. In ground A(1), he raises new ineffective assistance of counsel claims, namely that counsel was ineffective

for failing to object to witness testimony at trial; for failing to call Officer Purser as a rebuttal witness; and for failing to call Barlow's probation officer who would have verified, among other things, that he did not live at the Beard Road residence.  In ground A(2), he similarly raises the following new prosecutorial misconduct claims:  the prosecutor improperly testified by asking leading questions; improperly elicited testimony of prior bad acts; improperly elicited false testimony; improperly commented on evidence during direct examination; and improperly attempted to rehabilitate state witnesses. Lastly, in ground A(4) Barlow charges for the first time that his sentence was illegally enhanced in violation of the Eighth Amendment.[15]

A state prisoner must exhaust his claims in the highest state court in a procedurally proper manner before presenting them for federal habeas corpus review.  *O'Sullivan v Boerckel*, 526 U.S. 838, 844-45 (1999).  Exhaustion gives the state courts a fair opportunity to resolve any challenges to a conviction and provide any necessary relief. *Id*.  Only after the Mississippi Supreme Court has been provided with a fair opportunity to review a petitioner's claims in a procedurally proper manner, will the claims be considered ripe for federal review.  *See* 28 U.S.C. §2254.  If a petitioner fails to adhere to AEDPA's exhaustion requirement, his claims are procedurally barred from federal review under *Sones v. Hargett*, 61 F.3d 410, 416 (5th Cir. 1995).  Moreover, if the "court to

---

[15]The undersigned is mindful that certain arguments in the amended petition could be liberally construed as having been  previously raised in grounds one through five.  To that extent, the undersigned addresses only those newly raised claims that are unexhausted and not previously addressed herein.

which he would be required to return to meet the exhaustion requirement would now find the claims procedurally barred, then there has been a procedural default for purposes of federal habeas corpus relief." *Finley v Johnson*, 243 F.3d 215, 220 (5th Cir. 2001).

By failing to timely seek review of these claims in this case, Barlow has failed to "give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan*, 526 U.S. at 845. He has thus procedurally defaulted these claims precluding federal habeas review. *Jones*, 163 F.3d at 296 (when a petitioner allows his state law remedies to lapse without presenting his claims to the state courts, there is no substantial difference between failure to exhaust and procedural default). Because he also fails to show that cause and prejudice exist, or that failure to consider these claims will result in a fundamental miscarriage of justice, he cannot overcome the procedural default. *Id*. Accordingly, these claims should be dismissed with prejudice without review of the merits.

As his final amended ground for relief, Barlow asserts in A(3) that the trial court erred in failing to suppress his incriminating statements confessing to the ownership and location of the drugs. Respondent argues that this claim should be dismissed as untimely because it does not relate back to the original petition as required by *Mayle v. Felix*, 545 U.S. 644, 650 (2005) ( "An amended habeas petition ... does not relate back (and thereby escape AEDPA's one-year time limit) when it asserts a new ground for relief supported by

facts that differ in both time and type from those the original pleading set forth.").[16] Although Barlow responds that he was unable to secure his trial transcript because his placement in maximum security impeded his access to "legal facilities," he does not dispute Respondent's assertion that all inmates, including those under maximum security, have access to legal assistance upon request.[17]

Even if the Court were to reach the merits of this claim, Barlow's assertion that the trial court erroneously admitted his incriminating statements does not entitle him to habeas relief. Major Barefield testified at trial that after the drugs were discovered in plain view, he read Barlow his *Miranda* rights at the scene before any incriminating statements were made. *Miranda v. Arizona*, 384 U.S. 436 (1966). Officer Purser, Deputy Pitts, and others all gave corroborating testimony to this effect. Officer Purser also testified at the suppression hearing that after Barlow was read his *Miranda* rights, Barlow stated that he understood his rights and agreed to answer questions without his attorney; that he was promised nothing in exchange for answering the questions; that no actions or statements were taken to coerce Barlow to make any statements; and, that his statements confessing to the ownership and location of the drugs were freely and

---

[16] The docket in this case confirms that the amended petition was filed on September 13, 2011, more than one year after AEDPA's one-year statute of limitations expired on September 11, 2010. See 28 U.S.C. § 2244(d)(1) and (2).

[17] ECF No. 11, p .2.

voluntarily made.[18]

Barlow vehemently denies that he made any incriminating statements confessing to the ownership and location of the drugs. He also insists that he was not *Mirandized* until he was taken to the police station where he was presented with a written *Miranda* warnings form. According to Major Barefield, the form included two areas for Barlow's signature. Barlow signed the section indicating that he had been given his Miranda rights and understood them, but he refused to sign the section indicating waiver because "he did not want to sign anything or put it in writing."[19] Despite his refusal to sign this section, Major Barefield testified that Barlow continued to talk after being Mirandized a second time. Specifically, Major Barefield testified that he presented Barlow with a "cell phone, a pager, and the dope and cash," and Barlow admitted that all of the items were his. But Barlow insists that the only statement he ever made was that he did not live at the Beard Road residence.[20]

In rejecting this claim on direct appeal, the Mississippi Court of Appeals quoted the officers' testimonies at length and concluded as follows:

> . . . Barlow argues that he could not have "voluntarily, knowingly, and intelligently waived his constitutional right to remain silent when he vehemently denies that his *Miranda* rights were read to him before he is alleged to have made statements, and when he adamantly denies that the statements attributed to him were ever made." Further, Barlow argues that

---

[18]ECF No. 8-4, pp. 16-18.

[19]ECF No. 8-7, p. 40.

[20]ECF No. 8-7, pp. 11-12.

there was no need for the State to introduce the statements that he allegedly made since the trial judge had already upheld the warrantless search that resulted in his arrest. As evidenced from the [officers' testimonies], the statements were freely given after Barlow had been informed of his rights. Thus, **although he may not have explicitly waived his rights he implicitly did so by continuing to talk after he had been advised that he was under no obligation to make any statements.** This issue is without merit.

*Barlow,* 8 So.3d at 205-06. (Emphasis added).

Given the testimony and evidence presented at both the suppression hearing and trial, it was not an unreasonable determination of the facts for the state court to conclude that contrary to his denials, Barlow was not only *Mirandized* before any incriminating statements were made, but in fact made the incriminating statements attributed to him knowingly and voluntarily. The court's factual findings are entitled to a presumption of correctness under 28 U.S.C. § 2254(e)(1), and Barlow has failed to rebut these findings with clear and convincing evidence. *Pemberton,* 991 F.2d at 1225; *Miller v. Fenton,* 474 U.S. 104, 112 (1985) ( the admissibility of a petitioner's incriminating statement is a mixed question of law and fact). The only evidence that Barlow has ever proffered challenging his waiver-of-rights is the *Miranda* warnings form that he partially signed at the police station. But nothing of record indicates that the incriminating statements prior to this point were not knowingly and voluntarily made. Nor is there any evidence that Barlow ever affirmatively and unambiguously invoked his right to remain silent. *Berghuis v. Thompkins*, ——U.S. ——, 130 S.Ct. 2250, 2262 (2010).

Under clearly established federal law, a suspect may invoke his right to remain silent in any manner at any time before or during the interrogation. *Miranda,* 384 U.S.

436.  A written waiver "is usually strong proof of the validity of that waiver, but is not inevitably either necessary or sufficient to establish waiver."  *North Carolina v. Butler*, 441 U.S. 369, 373 (1979).  To the contrary, an "implicit waiver" of the "right to remain silent" is sufficient to admit a suspect's statement into evidence.  *Id.* at 376 (1979).  The evidence of record in this case establishes that Barlow implicitly waived his rights by making incriminating statements after he was *Mirandized* at the scene.  Thus, the state court's implicit finding of waiver was not contrary to or an unreasonable application of clearly established federal law, or an unreasonable determination of the facts.  Barlow is not entitled to relief on this claim.

For these reasons, it is the recommendation of the undersigned United States Magistrate Judge that this habeas petition should be dismissed with prejudice.

## NOTICE OF RIGHT TO APPEAL/OBJECT

Pursuant to Rule 72(a)(3) of the *Local Uniform Civil Rules of the United States District Courts for the Northern District of Mississippi and the Southern District of Mississippi*, any party within 14 days after being served with a copy of this Report and Recommendation, may serve and file written objections.  The objections must be filed with the Clerk of Court, served upon the other parties, and submitted to the assigned District Judge.  The objecting party must specifically identify the findings, conclusions, and recommendations to which he objects.  Within 7 days of the service of the objection, the opposing party must either serve and file a response or notify the District Judge that

he or she does not intend to respond to the objection.

The parties are hereby notified that failure to file timely written objections to the proposed findings, conclusions, and recommendations contained within this report and recommendation, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court.  28 U.S.C. § 636, Fed. R. Civ. P. 72(b) (as amended, effective December 1, 2009); *Douglas v. United Services Automobile Association*, 79 F.3d 1415, 1428-29 (5th Cir. 1996).

This the 13th day of June 2013.

/s/  Linda R. Anderson
UNITED STATES MAGISTRATE JUDGE